KLUTH, by Guardian *ad litem*, and another, Respondents, vs. CROSBY, Appellant.

*February 6—March 5, 1957.*

For the appellant there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

For the respondents there was a brief by *Cohen & Parins,* attorneys, and *Colburn G. Cherney* of counsel, all of Green Bay, and oral argument by *Robert J. Parins.*

MARTIN, C. J.  Defendant is the owner and operator of a garage, gasoline station, and wrecker service in the city of Green Bay. The amended complaint alleges, among other things, that on July 26, 1953, William Kluth, fifteen years of age, was a frequenter and guest in defendant's place of business which is a place of employment; that he was severely burned in an explosion and fire which resulted from defendant's violation of certain orders of the industrial commission: In the manner in which he maintained and permitted battery-charging equipment in his premises; in that he failed to keep drainage of crankcases in a tightly inclosed metal container; in that he permitted his premises to become dirty and unsafe and that he authorized and permitted gasoline to be used for the purpose of cleaning the premises; all in violation of sec. 101.06, Stats., and as the result of which plaintiffs sustained the damages complained of.

Defendant's answer denies that his premises are a place of employment; denies that William Kluth was a frequenter and guest on defendant's premises; denies the alleged violations of the industrial commission orders as set out above; and alleges that William Kluth had knowledge of the condition of the premises in the respects referred to, voluntarily acquiesced in the same, and assumed any risk incidental thereto.

The motion for summary judgment was supported by an affidavit of defendant's attorney setting forth excerpts from an adverse examination of William Kluth in which he testified that on the day of the fire he swept the floor of defendant's premises and scrubbed it with gasoline; that the floor was very dirty under a bench where there was a storage battery used as a booster battery in winter, and in order

to clean that area he grasped the battery by one of the cables, pulled it out, and when he let go of the cable it contacted the other cable, producing a spark which set the fire. Excerpts from the father's adverse examination were also set forth in which Bernard Kluth testified as to what his son had told him about the fire, which testimony was to the same effect as William's, with the following additional statements:

"*Q.* You heard him testify that he was cleaning the floor because Mr. Crosby had told him to clean the floor? *A.* Yes.

"*Q.* And that that was the usual way they did it there? *A.* That was the habit there, that's the way I understand it."

The affidavit of the guardian *ad litem* in opposition to the motion for summary judgment states, in addition to the code violations alleged in the amended complaint, that the defendant specifically instructed William Kluth and his younger brother Ronald to clean the premises with the use of gasoline and that the boys were permitted to do so unattended by an adult; that William Kluth was on the premises upon the express invitation of the defendant. A supplemental affidavit of the guardian *ad litem* sets forth certain testimony of the defendant on adverse examination to the effect that William Kluth was never his employee, that the boy hung around the gas station because his brother worked there and he was interested in automobiles; that William would sometimes sweep up the place, but "I never asked him to; he did it on his own accord;" and that the defendant sometimes gave the boy money as a gift because he felt sorry for him or wanted to get rid of him.

Further excerpts from William's adverse examination were set out by the guardian *ad litem,* in which the boy testified that the defendant "told us to clean, to clean it up, which they had always did, that's their method that they always used," naming the defendant's employees and the de-

fendant himself whom he had seen using gasoline to scrub the floor. As to whether the defendant ever told him to do it that way, he stated:

"*A.* I don't recall if he did or not, but he had said clean up at the time.
"*Q.* You don't recall that he ever told you to clean up by using gasoline, did you? *A.* Well, I think at a time back, he said use a little gas."

He further testified that he did not know that gasoline would catch on fire and there were no signs about the premises warning about being careful with fire or smoke.

It is obvious that the facts appearing from the pleadings and affidavits give rise to a number of substantial issues on which there are facts to be established and inferences to be drawn therefrom, all of which are matters for a jury. Defendant is not entitled to summary judgment unless the facts presented conclusively show that the plaintiffs' action has no merit and cannot be maintained.

In *Atlas Investment Co. v. Christ* (1942), 240 Wis. 114, 117, 2 N. W. (2d) 714, where the motion for summary judgment was brought by the plaintiff, this court said:

"The purpose to be served by the summary-judgment statute so far as it relates to motions by plaintiff, is to prevent interposition of false or frivolous answers for the purposes of accomplishing a delay in the securing of a just judgment. The statute is, however, drastic and is to be availed of only when it is apparent that there is no substantial issue to be tried. *Prime Mfg. Co. v. A. F. Gallun & Sons Corp.* (1938), 229 Wis. 348, 349, 350, 281 N. W. 697. It is not a substitute for a regular trial nor does it authorize trial of controlling issues on affidavits."

While the defendant is the moving party in this instance, the same rule applies. There are substantial issues to be tried; they cannot be decided on affidavits.

*By the Court.*—Order affirmed.